IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EVRYTHNG LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>AVERY DENNISON RETAIL INFORMATION SERVICES, LLC AND AVERY DENNISON RFID COMPANY,<br><br>Defendants. | Case No. 21-cv-4411 (LJL)<br><br>**JURY TRIAL DEMANDED** |

## DISCOVERY ORDER

After a review of the pleaded claims and defenses in this action, in furtherance of the management of the Court's docket under Federal Rule of Civil Procedure 16, it is ORDERED AS FOLLOWS:

1. **Discovery Limitations.** The discovery in this case is governed by the Federal Rules of Civil Procedure and this Court's local rules, except as follows:

    (a) <u>Interrogatories</u>. All interrogatories must comply with Local Rule 33.3.

        i.    Other than interrogatories pursuant to Local Rule 33.3(a), and excluding any interrogatories served prior to the entry of this Order, Plaintiff may serve up to fifteen (15) interrogatories on Defendants.

        ii.    Other than interrogatories pursuant to Local Rule 33.3(a), and excluding any interrogatories served prior to the entry of this Order, Defendants[1] may serve up to fifteen (15) interrogatories on Plaintiff.

---

[1] Defendants shall be considered collectively for purposes of all discovery limits in this case.

(b) <u>Requests for Admission</u>.

    i. Plaintiff may serve up to twenty-five (25) requests for admission on Defendants.

    ii. Defendants may serve up to twenty-five (25) requests for admission on Plaintiff.

    iii. Notwithstanding the limitations of paragraphs 3(b)(i) and (ii), any party may serve an unlimited number of requests for admission that seek an admission as to the authenticity and/or admissibility of a particular document or thing. Requests for admission directed to authentication shall be clearly denoted as such and shall be served separately from any requests for admission subject to the numerical limitations. Before serving any such request for admission, however, each party agrees to request that the opposing party stipulate to the authenticity and/or admissibility of such documents. If the opposing party fails to stipulate to the admissibility of all such documents within one week of such request for stipulation, the requesting party may serve on the opposing party requests for admission on all such documents.

(c) <u>Fact Depositions</u>.

    i. Plaintiff may take up to eighty (80) hours total of fact deposition testimony from Defendants, including depositions under Rule 30(b)(1) and Rule 30(b)(6) and third-party depositions. Plaintiff has a maximum of 20 depositions in which to use the total amount of fact deposition time.

    ii.    Defendants may take up to eighty (80) hours total of fact deposition testimony from Plaintiff, including depositions under Rule 30(b)(1) and Rule 30(b)(6) and third-party depositions. Defendants have a maximum of 20 depositions in which to use the total amount of fact deposition time.

    iii.    Any time used by Plaintiff for fact depositions prior to the issuance of this Order will be subtracted from the eighty (80) hour total referred to in paragraph 3(c)(i) in the amount of seventy-five percent (75%) of the actual time used.[2]

    iv.    Any time used by Defendants for fact depositions prior to the issuance of this Order will be subtracted from the eighty (80) hour total referred to in paragraph 3(c)(ii) in the amount of seventy-five percent (75%) of the actual time used.

    v.    Each deposition is limited to one (1) day of seven (7) hours.

    vi.    Each party has deposed certain employees of the other party or third-parties in this action for about three hours each.[3] Since each deposition is limited to seven (7) hours per Rule 30(d)(1), for any deposition of a person that has previously been deposed in this action prior to entry of this Order, any such

---

[2] By way of example, if prior to the issuance of the Order, Plaintiff took four (4) depositions for a total of twenty (20) hours, Plaintiff would have sixty-five (65) hours of remaining deposition time, because seventy-five percent (75%) of the twenty (20) hours of deposition time already used (i.e., fifteen (15) hours) would be counted against Plaintiff's eighty (80) overall fact deposition hours.

[3] This Stipulation is between the parties and therefore does not extend to third parties that have been deposed. Counsel will address the issue of redeposing a third-party if either party seeks to depose that third-party for a second time and provides the basis for doing so.

        deposition of that person for a second time is limited to any of the seven hours for that person that was not previously used.

(d)    <u>Expert Depositions.</u> Any deposition of an expert witness in this action will be limited to seven (7) hours per witness.

(e)    <u>Third party discovery.</u> The parties may serve subpoenas and other discovery on third parties. The parties will serve each other with copies of any third-party discovery in accordance with Federal Rule of Civil Procedure 45. The parties will serve each other with notice of receipt of any documents produced by third parties pursuant to subpoena within five (5) business days of receipt and will serve each other with copies of any documents produced by third parties pursuant to subpoena within seven (7) business days of receipt.

(f)    <u>Modification for Good Cause.</u> Any party may later move to modify these limitations for good cause and the opposing party can oppose that motion.

2.    **ESI Production.** Absent agreement of the parties or further order of this Court, the following parameters shall apply to ESI production:

(a)    <u>Metadata</u>. Absent a showing of good cause, general ESI production requests under Federal Rules of Civil Procedure 34 and 45, or compliance with a mandatory disclosure requirement of this Court, shall not include metadata. However, fields showing the date and time that the document was sent and received or created, the document's creator, file path, custodian information, the complete distribution list, as well as the file name or e-mail subject shall be included in the production if such fields exist.

(b) <u>General Document Image Format</u>. Each electronic document shall be produced in single-page Tagged Image File Format ("TIFF") or JPEG ("JPG") image format ("image files"), color-for-color. Image files shall be named with a unique production number followed by the appropriate file extension. Load files shall be provided to indicate the location and unitization of the image files. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document. Documents that exist in color shall be produced in color unless there is good cause not to produce in color.

(c) <u>Paper Documents</u>. Paper documents included in a party's production shall be scanned into image format, copied, and produced in the same manner specified in paragraph 6(b).

(d) <u>Native Files</u>. Notwithstanding paragraph 6(a), a party may produce Microsoft Excel Spreadsheets (.xls and .xslx files) and Computer Aided Design files (.cad, .dxf, and .dwg files) in native format with a bates-stamped slip-sheet and appropriate accompanying data referenced in paragraph 6(a).

(e) <u>Requests for Native Files</u>. A party that receives a document produced as an image file as specified in paragraph 6(b) may make a reasonable request to receive the document in its native format, and upon receipt of such a request, the producing party shall produce the document in its native format.

(f) <u>Request for Improved Images</u>. The parties shall respond to reasonable requests for the production of higher-resolution or color images. The producing party shall have

the option of producing the native-file version of the documents in response to such requests. A party cannot rely on a higher-resolution image than has been produced.

(g) <u>Text-Searchable Documents</u>. No party has an obligation to make its production text searchable; however, if a party's documents already exist in text-searchable format independent of this litigation, or are converted to text-searchable format for use in the litigation, including for use by the producing party's counsel, then such documents shall be produced in the same text-searchable format at no cost to the receiving party.

(h) <u>Production Number</u>. Each document image shall contain a sequentially ascending production number.

(i) <u>No Backup Restoration Required</u>. Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.

(j) <u>Other Business Communications</u>. Absent a showing of good cause, voicemails, text messages, PDAs, mobile phones, and other forms of non-e-mail business communications such as Google Hangouts, Microsoft Teams, Skype, WhatsApp, and Slack are deemed not reasonably accessible and need not be collected and preserved.

3. **Inspection of source code.** At this time, no computer source code has been requested for inspection. Both parties agree that any source will be designated Highly Confidential-Attorney's Eyes Only, Subject to Protective Order. If any source code is requested, the

parties agree to meet and confer to determine appropriate limits on any source code inspection and production.

4. **E-mail Production**. Absent agreement of the parties or further order of this Court, the following parameters shall apply to e-mail production in this case:

   (a) <u>E-mail Excluded from Requests Unless Specified</u>. General ESI production requests under Federal Rules of Civil Procedure 34 and 45, or compliance with a mandatory disclosure order of this Court, shall not include e-mail or other forms of electronic correspondence (collectively "e-mail"). To obtain e-mail, parties must propound specific e-mail production requests. For the sake of clarity, nothing in this Order permits a party to limit or restrict its collection, identification, review, production, etc. of non-e-mail ESI to the protocols governing the collection of e-mail ESI.

   (b) <u>Identification of E-mail Custodians</u>. If the Court adopts this proposed order, each party shall serve on the opposing party within (5) five days of entry of this proposed order, a list of the twelve (12) most significant email custodians and a brief description of why that custodian may have relevant information.

   (c) <u>E-mail Requests</u>. E-mail production requests shall identify the custodian, search terms, and time frame. The parties agree to negotiate in good faith to identify the proper custodians, proper search terms, and proper time frame. Each requesting side shall limit its e-mail production requests to a total of twenty (20) custodians per side for all such requests. The parties may jointly agree to modify this limit without the Court's leave. A party may move for leave for requests for additional custodians, upon a showing of good cause

(d) <u>Limitation on E-mail Requests</u>. Each requesting side shall limit its e-mail production requests to a total of seven (7) search phrases per custodian. The parties may jointly agree to modify this limit without the Court's leave. Each search phrase can include up to three alternatives[4] for the same term and can include wildcard characters.[5] The Court shall consider contested requests for additional or fewer search terms per custodian, upon a showing of good cause, including a distinct need based on the size, complexity, costs incurred to date, discovery requested and produced, and issues of this specific case, as well as efforts taken in the first instance to focus and target discovery. The search terms shall be narrowly tailored to particular issues. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word or translations of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. In order to alleviate unnecessary back and forth between counsel and reduce the large expense of e-discovery, the parties only need to meet and confer on search phrases if there is an

---

[4] An alternative is a different spelling and/or misspelling of the same term. For example, an alternative term for "color" is "colour," and an alternative for "Department of Justice" is "DOJ."

[5] A "wildcard" is a common Boolean search operator by which any variation on a root will be considered a search term hit. For example, the term "speak*" will generate hits for the words "speak," "speaks," "speaker," and "speaking."

       objection to the search phrases after running the search phrases as set forth in paragraph 4(e) below.

(e)   <u>Searches and Search Reports</u>.

    i. In an effort to reduce e-discovery costs and avoid discovery disputes, the parties will run the agreed-to search terms and generate ESI Search Reports and produce the ESI Search Reports. ESI Search Reports should identify the number of hits per search term, the custodians run against each set of terms, and date ranges for the searches. In accordance with the Federal Rules of Civil Procedure 26 and 34, the parties shall review the documents generated by the agreed-to search terms, and produce any non-objectionable documents (*e.g.*, responsive, relevant, and non-privileged documents). Similar to reviewing any other documents for production, the parties do not waive any objections by running the agreed-to search terms. As with any other document collection and production, the Parties have in accordance with the Federal Rules of Civil Procedure made objections to producing documents under Rule 34 and therefore they do not need to provide a written objection on a document-by-document level for any document not produced unless the document needs to be logged on a privilege log. The use of ESI search terms or ESI Search Reports shall not prevent any party from reviewing documents to determine their relevance and/or responsiveness and the parties shall produce responsive documents unless they have objections to producing the documents.

    ii. If after running the agreed-to search terms, a party objects to the search for a particular custodian, *e.g.*, because the party running the agreed-to search terms considers the agreed-to search terms to have generated a burdensome number of hits, the parties shall meet and confer in good faith with respect to the objected to search for that custodian and try to narrow the objected-to search phrases.

(f) Trial witnesses. To the extent that a party intends to bring a party employee or former employee to trial that was not previously identified as or known to be a potential witness or e-mail custodian before the close of discovery, that party shall produce the witness's e-mail as described above, even if that would result in more than custodians being subject to e-mail production requests than specified in paragraph 4(c). The producing party shall identify the witness to the other party with reasonable time to confer regarding the e-mail search terms and to produce the documents sufficiently before trial to allow for their review.

(g) <u>Requests for Additional Related Emails</u>. To the extent that a party produced or produces an e-mail: (i) sent from someone that was not identified or disclosed as an e-mail custodian; (ii) that does not match any search term contained in the opposing party's request(s) for production; or (iii) that does not fall within the timeframe specified in the opposing party's production requests, the producing party must also produce all relevant, non-objectionable, non-privileged e-mails upon request that were: (i) contained in the same e-mail thread or chain as the produced e-mail; (ii) replies to the produced e-mail; or (iii) forwards of the

produced e-mail. To the extent that a party objects to production of any document under this paragraph, that party shall provide a written basis for said objection.

5.  **Privileged Information.** There is no duty to disclose privileged documents or information. The parties agree pursuant to the applicable Federal and Local Rules that any documents or things protected by the attorney-client privilege, work product immunity, or other privilege or protection must be listed on a privilege log. However, parties are not required to log protected information on a privilege log if the information was generated on or after April 29, 2021. The parties agree to exchange privilege logs not later than sixty (60) days prior to the close of fact discovery in accordance with Local Civil Rule 26.2. Any party may challenge an assertion of privilege by following Local Civil Rules 5.1 and 37.2, and this Court's Individual Practices. Upon a showing of good cause, a witness may be re-deposed in the event that a document(s) previously listed on a privilege log is later produced. However, absent an additional showing of satisfying the legal standards for re-deposing a witness, any re-deposition shall be limited to the information contained within such produced document(s) that was previously listed on a privilege log and information that directly relates to that information.

6.  **Mass Production Is Not Per Se Waiver**. The mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.

7.  **Modification**. This Order may be modified for good cause or by agreement of the parties.

8.  **Obligations**. Except as expressly stated, nothing in this Order affects the parties' discovery obligations under the Federal or Local Civil Rules.

9. **Deposition Designations**. For the avoidance of doubt, the parties agree that deposition testimony and transcripts may be designated as "Attorneys Eyes Only" under the terms specified in paragraph 4 of the Protective Order.

10. **Proposed Stipulations by the Parties Regarding Discovery:**

    (a) <u>Communications With Support Staff</u>: There shall be no discovery sought or information offered into evidence relating to communications with translators, document imaging personnel, trial consultants, graphics personnel, or other similar litigation support personnel working under the direction of counsel. This provision does not supersede obligations under the applicable Rules or any orders of the Court.

    (b) <u>Electronic Service</u>: The Parties shall serve documents (including written discovery requests and responses to discovery requests), pleadings, correspondence, and other things electronically in lieu of service by U.S. Mail. If the document, pleading, correspondence, or other item is too large to be served by e-mail, then a cover letter or other similar notification shall be served electronically and the document, pleading, correspondence or other item shall be served via File Transfer Protocol ("FTP") site or other agreed-upon means. All electronic service on Plaintiff and discovery correspondence with Plaintiff shall include the e-mail reflector AD_EVRY_LIT@flastergreenberg.com. All electronic service on Defendants and discovery correspondence with Defendants shall include the e-mail address PH-EVRYTHNG-AD@paulhastings.com.

11. **Discovery from Related Corporate Entities.** The parties agree that they will reasonably search for and produce documents from Related Corporate Entities, and that they will make

available for depositions individuals employed by Related Corporate Entities. For purposes of this Order, the parties agree that "Related Corporate Entities" are subsidiaries of a party, parent companies of a party, directly or indirectly under the control of or under common control with a party, or that are commonly controlled directly or indirectly by a party. For the avoidance of doubt, for purposes of this Order, "Related Corporate Entities" includes, but are not limited to, all corporate entities that are subsidiaries of or commonly controlled by Avery Dennison Corporation or EVRYTHNG Limited, or that are controlled directly or indirectly by Avery Dennison Corporation or EVRYTHNG Limited. The parties further agree that custodians in Related Corporate Entities can properly be identified as custodians whose email records are searched under this Order.

    SO ORDERED.

_____
The Honorable Lewis J. Liman
U.S.D.J
3/7/2022